PRESTON *v.* NATIONAL BANK OF IONIA.

1. EVIDENCE—EXPLANATORY TESTIMONY—WRITTEN DOCUMENTS—PAROL EVIDENCE.

It is competent to introduce parol testimony to explain and interpret written documents.

2. INJUNCTION—BILLS AND NOTES—CHECK—RESTRAINING PAYMENT.

Complainant offered to purchase assets of an insolvent at judicial sale for $66,906.78. He also offered defendant, one of the principal creditors, 50 per cent. of its claims for an assignment thereof, provided his bid for the property was accepted and his sale confirmed. His offer was accepted by the creditor and the property was struck off to him, the sale confirmed by the court, and later, on petition of certain creditors, was set aside. Pursuant to complainant's arrangement, he forwarded a certified check, indorsed subject to the agreed conditions; which, being paid by mistake by the drawee bank to another bank, that presented the check for collection, payment to the defendant creditor was enjoined pending the determination of suit. The property of the insolvent was later sold at a higher price to another bidder. *Held,* that the injunction was properly made permanent, as complainant's offer to defendant creditor was made on the contingency that he obtain title to the insolvent estate by reason of his bid of $66,906.78.

Appeal from Ionia; Davis, J.   Submitted January 29, 1912.   (Docket No. 50.)   Decided March 29, 1912.

Bill by Thad. B. Preston against the National Bank of Ionia, Michigan, and the First National Bank of Traverse City for an injunction to restrain the payment of money upon a certified check. From a decree for complainant, defendant appeals. Affirmed.

*Thomas Smurthwaite* (*E. M. Davis,* of counsel), for appellants.

*George E. Nichols* (*R. A. Hawley,* of counsel), for appellee.

OSTRANDER, J.   The material facts are practically un-
disputed.   The defendant First National Bank of Tra-
verse City, Michigan, held complainant's check for $2,787,
drawn on the State Savings Bank of Ionia, Mich., cer-
tified by that bank April 14, 1909, upon the back of which
check was indorsed:

"Pay to 1st Natl. Bank Traverse City, Mich., subject
to terms of my letter Apr. 14-09.   T. B. Preston."

Said defendant bank received said check in a letter,
which reads as follows:

"IONIA, MICH., 4-14-09.

"FIRST NATIONAL BANK,
         "Traverse City, Mich.
" *Gentlemen:*
"Pursuant to an arrangement made with you by Mr.
Nichols, I am enclosing you certified check for $2,787.00
which is to be paid to you when the title to the South Side
Lumber Company is confirmed by the court and the
transfer properly made to me in full settlement of the
claim held by you against the said South Side Lumber
Company, which claim, with interest, amounts to
$5,575.00.   This is subject to any revision as to any
slight difference there may be in the amount due at the
time of the transfer.   Please signify your acceptance of
it and the conditions covering it.
                    "Yours truly,
                              "T. B. PRESTON."

Receipt of the check was acknowledged by the follow-
ing letter:

"4-15-09.

"T. B. PRESTON, Ionia, Mich.
" *Dear Sir:*
"We are in receipt of yours of the 14th with inclosure
of certified check for $2,787.00 according to the arrange-
ment made by Mr. Nichols in your behalf.
                    "Yours truly,
                         "LEON F. TITUS, Cashier."

A bid which complainant had made for the property of
the South Side Lumber Company to the receiver of said

company was confirmed by the court. Thereafter, upon the application of certain creditors, the order confirming the sale was set aside, the property was again offered for sale, and was bid in for a much larger sum than that offered by complainant by one John F. Ott, who conveyed the same, or caused it to be conveyed, to the South Side Company, a corporation organized on the evening of the day when the sale to complainant was confirmed—that is, June 5, 1909, in which complainant is principal stockholder. July 9, 1909, complainant wrote to the First National Bank of Traverse City a letter, which, with the reply thereto, is here set out:

"IONIA, MICH., 7–9–'09.

"FIRST NATIONAL BANK,
        "Traverse City, Mich.
" *Gentlemen:*

"On the 14th of April, 1909, I sent you certified check for $2,787.00 under the following conditions:

"To be held by you and not used until the sale of the entire property of the South Side Lumber Company was confirmed by the court and the papers properly executed and the transfer made to me. These conditions were in pursuance of an agreement made between us April 10, 1909, and this agreement was made in view of a bid I made for the properties and assets of the South Side Lumber Company of $66,906.78 which you had notice of. The property of said company was struck off to me the 28th of May, and the court confirmed the sale June 5th, but before title was conveyed to me by the receiver the court, on application of certain creditors, vacated the whole matter and ordered resale, and of all these matters you had notice.

"Therefore, by reason of the action of the court, our negotiations are ended and the contract canceled and I, therefore, respectfully demand the return of the certified check inasmuch as the provisions under which it was delivered to you have not been met.

"Kindly let me hear from you at once, and oblige,
                "Yours truly,
                        "T. B. PRESTON."

"July 14, 1909.

"T. B. Preston, Esq.,
          "Ionia, Mich.
"*Dear Sir:*
     "In reply to yours of the ninth inst. your proposition to us of April 10th was as follows: 'I will pay you fifty cents cash on the dollar for your present claims against the South Side Lbr. Co., payment to be made when the title to said property under receiver's sale is confirmed in me by the court.'
     "This proposition was accepted by us on condition that certified check for the amount offered was deposited with us, and you complied with that condition.
     "On June 5th, 1909, the receiver's sale of the property to you was confirmed by the court and our agreement was then fully performed and consummated and we have been at all times since and are now ready and willing to transfer to you by delivery all papers and claims held by us against the South Side Lbr. Co., as agreed.
     "We are aware that the order of the court confirming the sale to you was afterwards set aside by the court, but this was upon the express condition that you be paid all damages and loss occasioned by the last order of the court. You, therefore, have an undisputable claim against the receiver for any loss you suffer through your dealings with us, if any such loss there be, while we would have no remedy whatever. We do not think you are entitled to the return of the moneys paid to us on this agreement and we feel assured that upon reconsideration you will see that you should demand payment of your loss, if any, from the receiver and the same will be paid out of the funds received through the increased bid to obtain which the court set aside the order confirming the sale to you.

                    "Yours very truly,
                         "Leon F. Titus, Cashier."

     Later the check was sent to Ionia for collection, was there paid, it is claimed by mistake, the moneys passing into the hands of the defendant National Bank of Ionia, Mich., for the defendant First National Bank of Traverse City. Complainant filed his bill, praying that the National Bank of Ionia be enjoined from remitting or paying the money to the First National Bank of Traverse

City, and be required to return the money to the State Savings Bank of Ionia, and that the First National Bank of Traverse City be required to surrender the check to complainant to be canceled, and for other relief. The cause being put at issue and coming on to be heard, a decree was entered directing the National Bank of Ionia to pay to complainant said money and directing the First National Bank of Traverse City to pay to complainant interest on the money at 5 per cent. from June 29, 1910. The National Bank of Ionia was further directed to deliver to complainant the said check.

The following additional facts may be stated: The South Side Lumber Company, a Michigan corporation, having its principal office at Traverse City, Mich., became insolvent, and a receiver of the assets of said company was appointed December 17, 1907. The receiver continued to carry on the business of the company. In April, 1909, complainant submitted to the receiver a bid for all of the property and assets of the corporation as of April 1, 1909, agreeing to pay therefor in cash $66,906.78. A committee had been appointed by the creditors. This committee consisted of H. S. Hull, president of the People's Savings Bank, Leon F. Titus, cashier of the First National Bank of Traverse City, and W. P. Porter, of East Jordan, Mich. The matter was presented to the court, and a hearing was had, at which a large number of creditors attended, and an order was made reciting that it was for the interest of the company and the creditors that the property be sold, and that complainant's bid be accepted unless the receiver received a higher bid; the sale, if made, however, to be subject to confirmation by the court. The receiver offered the property for sale, the complainant's bid was the only one presented, and the property was struck off to him. Confirmation of this sale was opposed, but, after consideration, it was confirmed by the court.

A few days later, certain creditors asked to have the order confirming the sale set aside and the receiver re-

strained from conveying the property to complainant. Upon this petition an order to show cause was made, and there was a hearing. The order of confirmation was set aside upon certain conditions. A communication was received from J. F. Ott and others to the effect that if the assets of the said South Side Lumber Company should be again offered for sale, they would bid $82,000 for the same, the assets to be taken as of April 1, 1909, and they would further agree to fulfill and carry out all contracts made by the receiver. Complainant opposed the making of the order setting aside the order of confirmation and sought in this court, but unsuccessfully, a writ of mandamus to compel the setting aside of said order. A subsequent sale was had, as has been stated. The South Side Company was a corporation organized to take over the South Side Lumber Company property and business. Complainant furnished the money to carry out the terms of the bid upon the sale to Mr. Ott. We think the case a simple one.

The written evidence supplies the most of the facts. Oral testimony sufficient to show to what the writings referred, and precisely what the parties contemplated, was necessarily and properly admitted. The circuit judge was of opinion that because Leon F. Titus, cashier of the First National Bank of Traverse City, and H. S. Hull, president of the People's Saving Bank, were two of three members of a creditors' committee, both banks considerable creditors of the insolvent corporation, because, also, the bid made by complainant would have resulted in paying the said banks much less than 50 cents on the dollar of their respective claims, and because complainant had offered other unsecured creditors of the insolvent corporation 30 cents on the dollar for their claims, the contract made between complainant and the banks, including the First National Bank of Traverse City, was calculated to influence two members at least of the creditors' committee to recommend to the court the acceptance of complainant's bid, for which reason the whole contract was void as against public policy.

This theory of a recovery is not advanced in the bill of complaint, and, so far as we can ascertain, was not advanced by counsel for the complainant. We think it unnecessary to consider it.

In connection with the written evidence of what the contract of the parties was, the oral testimony shows, beyond dispute, that complainant had made a bid for the property; that it was the only bid which had been made by any one; that it was acceptable to two members at least of the creditors' committee, who proposed to and did present it to the court; and that a sale was therefore ordered, and the property struck off to complainant for the amount of the contemplated and proposed bid. We conclude that it was the understanding that the offer to pay 50 cents on the dollar for the claim of the bank was made with reference to said bid, and not to any other bid. Nor does it seem necessary to present an argument to prove that unless the sale to complainant was not only confirmed, but he was permitted to hold and be put in possession of and to gain title to the property for which he bid, his obligation did not require him to buy the claim. The amount complainant had agreed to pay upon contingency was not lost by him, and could have afforded no justification for a demand upon the receiver under the order of the court. Defendant First National Bank of Traverse City has lost nothing on account of any act or default of the complainant. It had, and still has, its claim against the South Side Lumber Company. It has not received 50 cents on the dollar for its claim from the complainant, and it ought not to receive it, because the circumstances under which the money was to be paid have never arisen. It is said, however, that complainant did buy the property, and that for all purposes of equitable consideration he now owns and controls the title. The title was taken, as has been stated, by the South Side Company. We have answered this contention substantially in saying that we find the contract of the parties to have been made with

169 MICH.—37.

reference to a bid of $66,906.78, for which sum complainant was to acquire the property.

The decree is affirmed, with costs to appellee.

MOORE, C. J., and STEERE, McALVAY, BROOKE, BLAIR, and STONE, JJ., concurred. BIRD, J., did not sit.