BARTELS v. FORD MOTOR CO.

1. WORKMEN'S COMPENSATION—CONSTRUCTION OF STATUTES—COMMON LAW.

The workmen's compensation act is a statute in derogation of the common law permitting no enlargement by principles of equity or common-law adaptations.

2. STATUTES—WORKMEN'S COMPENSATION—UNEMPLOYMENT COMPEN-
SATION—INTENT.

> The legislative intent in enacting the workmen's compensation
> act and the unemployment compensation act was to set up two
> independent organizations for the administration of two kinds
> of compensation, payable from different funds or sources
> (Act No. 10, Pub. Acts 1912 [1st Ex. Sess.], as amended;
> Act No. 1, Pub. Acts 1936 [Ex. Sess.], as amended).

3. WORKMEN'S   COMPENSATION—UNEMPLOYMENT   COMPENSATION—
FURTHER COMPENSATION.

> Injured employee who was totally disabled for a time, rehired
> by the employer, then laid off and paid unemployment com-
> pensation, was entitled, on application for further compensa-
> tion, to workmen's compensation for period during which
> he had been paid unemployment compensation (2 Comp. Laws
> 1929, § 8429; Act No. 1, §§ 2, 3, 26 [c], 29, as amended by
> Act No. 347, Pub. Acts 1937).

Appeal from Department of Labor and Industry.
Submitted October 11, 1939. (Docket No. 124, Cal-
endar No. 40,689.) Decided December 20, 1939.

Walter J. Bartels presented his claim against
Ford Motor Company for compensation for injuries
sustained in defendant's employ. On petition for
further compensation. Award to plaintiff. Defend-
ant appeals. Affirmed.

*George H. Anderson,* for plaintiff.

*E. C. Starkey* and *W. J. Jones* (*Toy & Newman,*
of counsel), for defendant.

SHARPE, J. The facts in this cause are not in dis-
pute. On July 9, 1936, plaintiff, Walter J. Bartels,
while working for defendant company sustained a
left inguinal hernia. He was paid compensation for
total disability of $18 per week from August 3, 1936,
until September 21, 1936, pursuant to agreement.
Plaintiff thereafter continued working for defend-

ant company at full wages until December 21, 1937, at which time he was laid off work.

On January 16, 1939, plaintiff filed a petition for further compensation. The deputy commissioner granted plaintiff an award. Defendant company filed an appeal to the department of labor and industry, and subsequent to the appeal the parties entered into the following stipulation:

"An award was entered by Deputy Commissioner Black on February 20, 1939, awarding the above-named plaintiff, Walter J. Bartels, $9 per week partial disability from December 22, 1937, until the further order of the department.

"Subsequent to above award it develops that plaintiff drew 16 weeks at $15 per week unemployment compensation from September 25, 1938, to January 14, 1939, by reason of which defendant Ford Motor Company claims a deduction of $9 per week during that period and by reason of which the defendant Ford Motor Company has filed an appeal.

"It is therefore stipulated by and between Walter J. Bartels, his attorney, George H. Anderson, and E. C. Starkey, attorney for the Ford Motor Company, that compensation be paid in accordance with the award, less the period of 16 weeks during which plaintiff was paid unemployment compensation, and that the only question that said commission of department of labor and industry shall decide on review is as to whether said plaintiff shall be paid compensation at the rate of $9 per week partial disability during the 16 weeks for which he drew unemployment compensation, or whether the defendant Ford Motor Company shall be allowed to deduct that period and not pay plaintiff compensation during said period of 16 weeks; and that the department may dispose of this question without the formality of filing a transcript."

The department affirmed the award of the deputy and held that it was without authority to make any

deduction for benefits which the plaintiff has received from other sources during the period of time for which it has been determined by the deputy commissioner and agreed upon by the parties in the stipulation that plaintiff has been partially disabled; and based this holding upon 2 Comp. Laws 1929, § 8429 (Stat. Ann. § 17.163).

Defendant company appeals and contends that the receipt of unemployment benefits under Act No. 1, Pub. Acts 1936 (Ex. Sess.), as amended by Act No. 347, Pub. Acts 1937, disqualifies plaintiff from thereafter receiving *any* compensation under the workmen's compensation act for that period of time during which he received unemployment benefits; and bases its contention upon Act No. 1, Pub. Acts 1936 (Ex. Sess.), as amended by Act No. 347, § 29, Pub. Acts 1937, which provides as follows:

"An individual shall be disqualified for benefits * * *

"(d) For any week with respect to which he is receiving or has received payments in form of * * *

"(3) Compensation for temporary partial disability under the workmen's compensation law of any State * * * *Provided,* That if such payment is less than the benefits which would otherwise be due under this act, he shall be entitled to receive for such week, if otherwise eligible, benefits reduced by the amount of such payments."

The workmen's compensation law (Act No. 10, Pub. Acts 1912 [1st Ex. Sess.], as amended [2 Comp. Laws 1929, § 8407 *et· seq.*]) provides in brief that compensation may be paid to employees for disability or death resulting from accidental injuries or occupational injuries or diseases under certain circumstances set forth in the act; that the compensation is paid either directly by the employer, who is permitted to carry his own risk, or by an insurance

company, which carries the risk for the employer; that the liability for and the amount of compensation is determined by a special administrative tribunal, known as the commission of the department of labor and industry; and that the powers and duties of the department are expressly set forth in the act.

Of more recent origin is the unemployment compensation act (Act No. 1, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937). As stated in the title, benefits provided by this act are to be paid for unemployment.

The act expressly provides (Comp. Laws Supp. 1940, § 8485–42, Stat. Ann. 1939 Cum. Supp. § 17.502):

"Sec. 2. The legislature acting in the exercise of the police power of the State declares that the public policy of the State is as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this State. Involuntary unemployment is a subject of general interest and concern which requires action by the legislature to prevent its spread and to lighten its burden which so often falls with crushing force upon the unemployed worker and his family, to the detriment of the welfare of the people of this State. Social security requires protection against this hazard of our economic life. Employers should be encouraged to provide stable employment. The systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment by setting aside unemployment reserves to be used for the benefit of persons unemployed through no fault of their own, thus maintaining purchasing power and limiting the serious social consequences of relief assistance, is for the public good, and the general welfare of the people of this State."

Section 3 of the act creates a new commission to administer the act which is to be known and designated as the ''Michigan unemployment compensation commission.''

The source of funds for unemployment compensation differs from that for workmen's compensation. Under the workmen's compensation act the employee is paid either directly by his employer, who may carry his own risk, or by his employer's insurance company. Under the unemployment compensation act, the employee is paid benefits by the commission (§ 26 [c]) from a fund in which is pooled contributions of all employers and funds from other sources.

While this case is one of first impression in this State, we find that section 13 of part 2 of the workmen's compensation act (2 Comp. Laws 1929, § 8429 [Stat. Ann. § 17.163]) provides:

''No savings or insurance of the injured employee, nor any contribution made by him to any benefit fund or protective association independent of this act, shall be taken into consideration in determining the compensation to be paid hereunder, nor shall benefits derived from any other source than those paid or caused to be paid by the employer as herein provided, be considered in fixing the compensation under this act except as provided in subsection one of section seven, part one.''

In *Tews* v. *C. F. Hanks Coal Co.*, 267 Mich. 466, we had occasion to interpret the compensation law and there said:

''The compensation act is in derogation of the common law and, therefore, its measure of relief may not be extended beyond its express terms; it is a legislative creation permitting no enlargement by principles of equity or common-law adaptations. It

is arbitrary and where it speaks nothing can be added nor changed by judicial pronouncement. It imposes liability upon operatives under its provisions and measures exclusive relief in its own terms."

The legislative intent was to set up two independent organizations for the administration of two kinds of compensation, payable from different funds or sources. Until the unemployment compensation act became the law of this State there could be no question of plaintiff's right to compensation for the disputed period; and to permit a set-off by the department of labor and industry would in effect extend relief to the employer beyond the express terms of the workmen's compensation act. The contingency which has arisen in this case has come about by reason of the passage of the unemployment compensation act. The remedy lies with the legislature.

The award is affirmed, with costs to plaintiff.

BUTZEL, C. J., and WIEST, BUSHNELL, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred.